AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| Shiraaz Sookralli, | ) | Case No. 19-6076-HUNT |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __July 2017 to September 2018__ in the county of __Broward and Miami-Dade__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C Sections 1341, 1343, 1349; 1956, and 1957 | Mail Fraud, Wire Fraud, Conspiracy to Commit Mail and Wire Fraud; and Money Laundering |

This criminal complaint is based on these facts:

**See Attached Affidavit**

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Austin M. Steelman, FBI, Special Agent
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __02/14/2019__

_____
*Judge's signature*

City and state: __Fort Lauderdale, Florida__

Patrick Hunt
_____
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF ARREST WARRANT

I, Austin M. Steelman, being duly sworn, hereby declare and state as follows:

1.  I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since February 2016. I am currently assigned to the Miami Field Office of the FBI, which is located in this District. Prior to my employment with the FBI, I was an attorney for 3 years. During my service with the FBI, I have participated in white collar criminal investigations, including various fraud schemes related to *Ponzi* schemes, corporate fraud, securities fraud, money laundering, market manipulation and company embezzlement investigations.

2.  I am one of the FBI case agents directing the joint FBI-IRS investigation into Shiraaz Sookralli ("Sookralli") who is the former VP of Marketing for Copans Motorsports d/b/a Champion Porsche ("Champion Porsche") and its affiliate Champion Motorsports, for violations of Title 18 United States Code Sections 1341 (mail fraud), 1343 (wire fraud), conspiracy to commit both mail and wire fraud (1349), and money laundering (1956 and 1957). I have participated fully in the investigation and, as a result of my participation, I am familiar with the circumstances of the investigation and the information set forth in this affidavit.

3.  Because this affidavit is being submitted for the limited purpose of establishing probable cause for the issuance of an arrest warrant, each and every fact known to me regarding this investigation is not included.

### Overview of Sookralli's Fraudulent Scheme

4.  The FBI, IRS, and a federal grand jury are currently investigating Shiraaz Sookralli in connection with a wire fraud, mail fraud, and money laundering scheme involving his former employer, Champion Porsche. Champion Porsche, which is

located in Broward County, Florida, in the Southern District of Florida is, among other things, the Nation's largest volume Porsche dealer. Sookralli became an employee there sometime in 2007. He abandoned his job there in September 2018. Sookralli worked at Champion Porsche for over ten years, mainly assisting in the sale of Porsche and other automobiles. Towards the end of his tenure with Champion Porsche, Sookralli specialized in selling high-end Porsche vehicles. These were mainly highly sought-after Carrera 911 vehicles that could sometimes fetch a price of over $250,000.

5. Sometime in 2017, Sookralli and another possible co-conspirator, working under his direction, opened a "shell" corporation in the State of Florida known as "Champion Autosports." The name "Champion Autosports" bears great resemblance to Champion Porsche. Sookralli's corporation, "Champion Autosports" also bears a great resemblance to Champion Motorsports, an affiliate of the dealership, where Sookralli also worked. After forming the shell corporation, Sookralli's associate, Devika Budhram opened a bank account in the shell corporation's name. Eventually Sookralli, under the guise of his Champion Porsche affiliation, entered into bogus sales orders with individuals around the United States for the unauthorized sales of non-existent future exotic and rare Porsche models. To consummate these sales, Sookralli required and accepted cash deposits, wire transfer, and bank checks, that he later deposited into the shell company's bank account. The buyers relied on Sookralli's longtime Champion Porsche employment, his title as Vice President of Marketing, his representations that they would be receiving a yet-to-be-built Porsche vehicle, and the seemingly legitimate

2

bank account for wiring deposits to Sookralli. At no time did any representative at Champion Porsche authorize Sookralli to conduct these transactions that resulted in Sookralli embezzling Champion Porsche money.

6.    In total, Sookralli received over $2,200,000 from his fraudulent actions from approximately 30 customers who never received the Porsche vehicle from Sookralli.

## Interviews

7.    Interviews of Champion Porsche owners and workforce personnel, as well as interviews of finance personnel of high-end, Miami nightclubs and restaurants confirmed that Sookralli frequently enjoyed an extravagant and opulent lifestyle. Bank records analysis shows that Sookralli amassed large tabs at these night clubs and restaurants that were paid with the proceeds of his fraudulent activity. The dealership interviews show that Sookralli was not an authorized Porsche salesman and was not authorized to solicit sales for himself through his own corporation. Nor did he have an ownership interest in Champion Porsche. They also show that Sookralli did not report his vehicle sales to the Sales Manager at Champion Porsche, as was protocol at the dealership. The nightclub and restaurant personnel interviews provided a detailed account of Sookralli's unsustainable spending habits transpiring from the start of his fraud until his actions were revealed in various online forums and media reporting. Additionally, documentation provided by the nightclubs indicated the likely existence of an offshore bank account used by Sookralli.

8. The Champion Porsche and workforce personnel interviewees described how in approximately September 2018, at approximately the same time when clients began calling the dealership to inquire about their Porsche vehicles purportedly purchased through Sookralli, Sookralli abandoned his office at Champion Porsche and was nowhere to be found. Sookralli never came back to work.

9. After the fraud scheme was discovered, the customers that were victimized by Sookralli confirmed that Sookralli personally instructed each of them to provide him with deposits to secure the particular Porsche vehicle purchases.

## Consent to search Sookralli's office

10. On October 4, 2018, FBI personnel were given permission by Champion ownership to conduct a search of Sookralli's locked and abandoned Champion office. The search yielded many discoveries of interest. For instance, the office computer assigned to Sookralli was missing and replaced with an older model computer not assigned to him. This was likely done to prevent any content of his fraudulent activities contained on his computer from being found. In fact, Sookralli, in a telephone conversation with Champion Porsche agents, admitted to destroying his work computer. Agents also discovered receipts with high dollar totals from Miami area nightclubs and restaurants in Sookralli's name.

## Financial Records

11. Thus far, financial records gathered and analyzed during the investigation reveal well over $2,200,000.00 of victim/customer dollars entered the bank account in the shell company's name. The money was directly traced from the 30 individuals that Sookralli defrauded. The money was quickly and systematically drained from the shell company account for lavish lifestyle expenditures and financial transaction

4

transfers to other bank accounts controlled by Sookralli or his associates. Sookralli spent tens of thousands of dollars on luxury vehicles and jewelry, and sent multiple wires exceeding $10,000 to nightclubs and restaurants. Sookralli also funneled amounts in excess of $10,000 at a time from his shell company account to bank accounts held in his and his family member's names. By layering these transactions between accounts, the source of the funds could be concealed.

## Admissions

12. On approximately September 10, 2018, Champion's civil attorney was in contact with Sookralli and asked him if he had taken hundreds of thousands of dollars from Champion customers. Sookralli responded something to the effect of, "More like millions." Sookralli was then asked to send the attorney a list of customers who had sent Sookralli money, so the customers could be accounted for and potentially repaid. Shortly thereafter, also on or around September 10, 2018, Sookralli emailed Champion's attorney a list of approximately 30 customers who he had taken deposits from.

13. Based upon my training and experience in fraudulent schemes and the information learned during the course of the investigation, your affiant respectfully submits that there is probable cause to believe that Sookralli committed mail fraud in violation of 18 U.S.C. Section 1341, wire fraud, in violation of Title 18, United States Code, Section 1343; conspiracy to commit mail and wire fraud, in violation of Title 18, United States Code, Section 1349; and money laundering, in violation of Title 18, United States Code, Sections 1956 and 1957.

14.     Affiant submits that public disclosure of the information contained in this affidavit and public disclosure of the existence of the arrest warrant for Sookralli may compromise the investigation, may cause suspect to flee in order to avoid apprehension, may cause the destruction of physical evidence, and may cause the further dissipation of victim car purchaser's funds. Accordingly, affiant respectfully requests that the Court seal this affidavit and the accompanying warrant in order to avoid jeopardizing the ongoing investigation into Sookralli and his possible accomplices.

The foregoing is true and correct to the best of the Applicant's knowledge.

FURTHER AFFIANT SAYETH NAUGHT

_____
Austin M. Steelman
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on February 14, 2019
At Fort Lauderdale, Florida

_____
PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

No. _____

UNITED STATES OF AMERICA

vs.

SHIRAAZ SOOKRALLI,

Defendant.

_____/

## CRIMINAL COVER SHEET

1.    Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)?   No.

2.    Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?   No.

Respectfully submitted,

ARIANA FAJARDO ORSHAN
ACTING UNITED STATES ATTORNEY

BY: _____
ROGER CRUZ
ASSISTANT UNITED STATES ATTORNEY
Florida Bar Number 157971
99 N. E. 4th Street
Miami, Florida   33132-2111
TEL (305) 961-9207
FAX (305) 530-7976